Wayne E. Borgeest
Joan M. Gilbride
Robert A. Benjamin
**KAUFMAN BORGEEST & RYAN LLP**
200 Summit Lake Dr
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
rbenjamin@kbrlaw.com

*Attorneys for Axis Reinsurance Company*

DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                        :

AXIS REINSURANCE COMPANY,     :     No. 07-CV-7924 (GEL)

                    :

            Plaintiff,     :
      v.               :

                    :

PHILLIP R. BENNETT, et al.,     :

                    :

           Defendants.     :

                    :

-------------------------------------------------------------------- X
                    :

In re                 :     Chapter 11

                    :

REFCO, INC., et al.,        :     Case No. 05-60006 (RDD)

                    :

           Debtors.     :     Jointly Administered

                    :

-------------------------------------------------------------------- X
                    :

AXIS REINSURANCE COMPANY,     :     Adv. Proc. No. 07-1712-RDD

                    :

            Plaintiff,     :
      v.               :

                    :

PHILLIP R. BENNETT, et al.,     :

                    :

           Defendants.     :

                    :

```
-------------------------------------------------- X
                                                   :
TONE N. GRANT, et al.,                             :    Adv. Proc. 07-2005-RDD
                                                   :
                    Plaintiffs,                    :
            v.                                      :
                                                   :
AXIS REINSURANCE COMPANY,                           :
                                                   :
                    Defendant.                     :
                                                   :
-------------------------------------------------- X
                                                   :
LEO R. BREITMAN, et al.,                            :    Adv. Proc. No. 07-2032-RDD
                                                   :
                    Plaintiffs,                    :
            v.                                      :
                                                   :
AXIS REINSURANCE COMPANY,                           :
                                                   :
                    Defendant.                     :
                                                   :
                                                   :
-------------------------------------------------- X
                                                   :
AXIS REINSURANCE COMPANY,                           :    (1) No. 07-CV-9420-GEL
                                                   :    (2) No. 07-CV-9842-GEL
                    Plaintiff,                     :    (3) appeal not yet assigned
            v.                                      :
                                                   :
PHILLIP R. BENNETT, et al.,                         :
                                                   :
                    Defendants.                    :
                                                   :
-------------------------------------------------- X
                                                   :
TONE N. GRANT, et al.,                             :    No. 07-CV-9843-GEL
                                                   :
                    Plaintiffs,                    :
            v.                                      :
                                                   :
AXIS REINSURANCE COMPANY,                           :
                                                   :
                    Defendant.                     :
                                                   :
-------------------------------------------------- X
```

**APPELLANT'S BRIEF IN SUPPORT OF ITS APPEAL FROM THE
BANKRUPTCY COURT'S ORDERS: (1) DISMISSING AXIS'S COMPLAINT
WITHOUT PREJUDICE WHILE RETAINING THE COUNTERCLAIMS; AND
(2) GRANTING SUMMARY JUDGMENT REQUIRING AXIS TO ADVANCE
<u>DEFENSE COSTS PRIOR TO AN ADJUDICATION OF COVERAGE</u>**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................... iii

**JURISDICTIONAL BASIS** ........................................................................ 1

**ISSUES PRESENTED** ................................................................................ 1

**STATEMENT OF THE FACTS** ................................................................ 1

**PROCEDURAL POSTURE** ....................................................................... 6

**STANDARD OF APPELLATE REVIEW** ............................................... 10

**ARGUMENT** .............................................................................................. 10

I.           **THE BANKRUPTCY COURT'S RETENTION OF THE COUNTERCLAIMS IS INCONSISTENT WITH THE BANKRUPTCY COURT'S DISMISSAL OF AXIS'S COMPLAINT AND HAS RESULTED IN PIECEMEAL LITIGATION** .................. 10

II.          **THE BANKRUPTCY COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT TO THE INSUREDS CONTRARY TO THE EXPRESS UNAMBIGUOUS TERMS OF THE INSURANCE CONTRACT, BASED UPON A MISAPPLICATION OF PRIOR CASELAW, AND IGNORING BASIC CONCEPTS OF CONTRACT INTERPRETATION** .......................................................................... 13

        A.    **The Axis Policy Language Addressing Payment of Defense Costs is Materially and Unavoidably Different from the Worldcom Policy Language** ............................................................................ 14

        B.    **The Clear and Unambiguous Language of the Axis Policy Does Not Require Advancement When Axis Has Denied Coverage** .................. 17

**C.** **New York Law Does Not Compel the Advancement of Defense Costs Where an Insurer Has Disclaimed Coverage Under a D&O Policy** .. 23

**D.** **Public Policy Prevents the Court From Gifting Coverage to the Insureds Which They Did Not Purchase** ............................................. 25

**CONCLUSION** ............................................................................................................ 27

## **TABLE OF AUTHORITIES**

### Cases

*Albert J. Schiff Assoc., Inc. v. Flack*, 417 N.E.2d 84 (N.Y. 1980)..............18, 19, 20, 24

*Carlin Equities Corp. v. Houston Casualty Co.*, 2007 WL 2456958, Index No. 05-cv-9508-LAP (S.D.N.Y. August 24, 2007).................................................................. 24, 25

*Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687 (N.Y. 2002)....................................................................................17, 18, 20

*Cornellier v. American Casualty Co.*, 389 F.2d 641 (2d Cir. 1968).........................19

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000)................................................10

*Drilling v. New York Life Insurance Co.*, 137 N.E. 314 (N.Y. 1922) .......................17

*Federal Insurance Company v. Kozlowski*, 792 N.Y.S.2d 397 (App. Div. 1st Dep't 2005) ................................................................. 5, 24, 25

*Government Employees Insurance Co. v. Kligler*, 42 N.Y.2d 863 (N.Y. 1977).. ............ 19

*In re WorldCom*, 2007 U.S. Dist LEXIS 67669 (S.D.N.Y. September 14, 2007)............ 10

*In re WorldCom, Inc. Securities Litigation*, 354 F.3d 455 (S.D.N.Y. 2005).... 6, 14, 15, 24

*International Business Machines v. Liberty Mutual Insurance Co.*, 363 F.3d 137 (2d Cir. 2004) ........................................................................................................... 5

*Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 1989 WL 162315 (S.D.N.Y. Aug. 4, 1989) ................................................................................ 10

*Moshiko, Inc. v. Seiger & Smith, Inc.*, 529 N.Y.S.2d 284 (App. Div. 1st Dep't), *aff'd*, 529 N.E.2d 420 (N.Y. 1988)............................................................ 19

*Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33 (2d Cir. 2006)...............................................................................................24

*Stephens v. National Distillers and Chemical Corp., et al.*, 1996 WL 271789, (S.D.N.Y. May 21, 1996)..........................................................................25

## JURISDICTIONAL BASIS

This Court has jurisdiction, pursuant to 28 U.S.C. § 158(a), to review Axis Reinsurance Company's ("Axis") appeal from Bankruptcy Court Orders: (1) dismissing Axis's complaint without prejudice while retaining the counterclaims; and (2) granting summary judgment requiring Axis to advance defense costs prior to an adjudication of coverage.

## ISSUES PRESENTED

(1) Whether the Bankruptcy Court, having previously determined that it must dismiss Axis's complaint seeking a declaratory judgment of no coverage due to overlap with the underlying securities fraud litigation, was correct in failing to also dismiss counterclaims seeking a declaratory judgment of coverage.

(2) Whether the Bankruptcy Court should have ordered Axis to pay defense costs where the Axis Policy only provides for advancement of **covered** defense costs, Axis denied coverage, and the Bankruptcy Court previously ruled it could not determine the merits of coverage under the Axis Policy.

## STATEMENT OF THE FACTS

Refco, Inc. ("Refco")[1] has admitted that, over a seven-year period, its former Chairman, President and Chief Executive Officer, Phillip Bennett, hid hundreds of millions of dollars of uncollectible receivables that should have shown up on Refco's balance sheet as related-party transactions. *See* Exhibit A to the Declaration of Joan M.

---

[1] The name "Refco," as used throughout this appeal, refers to Refco, Inc., the publicly traded company formed pursuant to the August 2005 initial public offering, as well as to Refco Group Ltd., LLC, the company through which Refco's business was primarily conducted prior to the IPO. "Refco" also refers to subsidiaries of Refco, Inc. and Refco Group Ltd., LLC.

1

Gilbride, dated November 28, 2007 (hereinafter "Gilbride App. Decl."). This massive fraud, about which it has been alleged other Refco directors and officers had knowledge, or in which they actually participated, led to Refco's announcement in October 2005, just two months after going public, that its prior financial statements could no longer be relied upon.[2] As a result of this announcement, dozens of criminal and civil complaints were filed against Bennett and other Refco directors and officers, alleging fraud and various other misdeeds by the defendants (the "Underlying Actions").

Axis is an excess directors' and officers' liability ("D&O") insurer of Refco and its directors and officers. In anticipation of Refco's late-spring, early-summer IPO in 2005, Axis received a written warranty letter from Refco, signed by CEO Phillip Bennett on behalf of all prospective insureds (the "Warranty"). In reliance upon the Warranty and other information (including financial information) provided to Axis, Axis issued Securexcess Policy Number RNN 506300 (the "Axis Policy") – which had a policy period commencing on August 11, 2005 – the date of Refco's IPO. *See* Exhibit B to the Gilbride App. Decl. Barely two months after going public, on October 17, 2005, Refco filed for bankruptcy as a result of this massive fraud and the resulting fallout. The Underlying Actions were then submitted to Axis for coverage.

On March 6, 2006, Axis denied coverage under the Axis Policy to the Defendants[3] for these matters on several grounds: (1) breach of a January 21, 2005

---

[2] A detailed description of the Refco fraud can be found in the 363 page Examiner's Report (Bankr. S.D.N.Y. filed July 11, 2007) (05-60006, Doc. 5530). The Examiner's Report recounts the detailed factual basis for the allegations of fraud against Bennett and others.

[3] Axis denied coverage to all Insureds for all claims arising out of Refco's demise. The Insureds other than Refco, the individual directors and officers (herein "Individual Insureds") have divided themselves into four categories: (1) the "Officer Insureds" – Klejna, Murphy, Sexton, Sherer and Silverman; (2) the "Director Insureds" – Breitman, Gantcher, Harkins, Jaeckel, Lee, O'Kelley, and Schoen; (3) the "Indicted Insureds" – Bennett, Grant and Trosten; and (4) the "Cooperating Defendant" – Maggio (collectively "Insureds").

Warranty Letter executed by Bennett on behalf of all Insureds under the Axis Policy; (2) the "Knowledge Exclusion" (Endorsement 6); (3) an Exclusion in the Application; and (4) the Pending and Prior Litigation Exclusion. *See* Exhibit C to the Gilbride App. Decl.

In connection with the underwriting of the Axis Policy, Axis requested and received the Warranty which provides, in pertinent part:

> No person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he/she/it has reason to suppose might afford grounds for any Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance, EXCEPT: [Louis Capital Markets, LP v. Refco Group Ltd., LLC, et al.]

It further provides that:

> It is agreed by the undersigned on behalf of all Insureds under the Policy, that with respect to the above statements, that if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance.

The Warranty was signed by Phillip Bennett, "on behalf of all Insureds under the Policy," on January 21, 2005. *See* Exhibit D to the Gilbride App. Decl.

The Knowledge Exclusion, found at Endorsement 6 of the Axis Policy,[4] provides that there is no coverage for Claims, "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which any Insured had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy." *See* Exhibit B to the Gilbride App. Decl.

Axis's analysis of these issues, as well as an Exclusion in the Application and the Pending and Prior Litigation Exclusion, required a determination, essentially, of whether Bennett and/or certain other Insureds were aware of facts, circumstances, and/or

---

[4] Reference to the Axis Policy also includes reference to certain terms and conditions of the primary policy which the Axis Policy incorporates by reference.

situations which gave them reason to suppose a Claim might arise therefrom.  Axis
concluded, based on the tacit public admissions in Refco's SEC filings, that Bennett and
potentially certain other Insureds, did have such knowledge or information at the relevant
times.[5]  This conclusion has been borne out by the Examiner's Report as well as various
other documents filed within the Underlying Litigation.    All of this background
information was provided to the Bankruptcy Court as part of Axis's papers in opposition
to the first preliminary injunction motion.  *See* Exhibit E to the Gilbride App. Decl.

        None of the Defendants responded in any way to Axis's denial of coverage letter
dated March 6, 2006, and in May 2007, Axis commenced a declaratory judgment action
seeking a judicial declaration that, pursuant to these terms of the Axis Policy, conditions
and exclusions, there is no coverage under the Axis Policy in connection with the
Underlying Actions.  *See* Exhibit C to the Gilbride App. Decl.

        The plain terms of the Axis Policy provide only for payment of ***covered*** Defense
Costs.  The Axis Policy requires that Axis make the initial determination of whether or
not something is covered.  Furthermore, the policy terms do not impose upon Axis a duty
to defend such as may be found in other types of liability insurance.  In fact, the Axis

---

[5]        Specifically, Axis concluded that the Warranty dated January 21, 2005 was false, and a
misrepresentation, because Bennett, and possibly other Insureds, did indeed possess knowledge of facts,
circumstances, situations, acts, errors or omissions which they had reason to suppose might afford grounds
for a "claim" (as that term is defined in the Primary Policy) such as would fall within the scope of the Axis
Policy.  With respect to the Exclusion in the Application, Axis concluded that, as of February 8, 2005,
Bennett, and possibly other Insureds, were aware of facts, circumstances or situations involving Refco
which they had reason to believe might result in a "claim" being made and that this knowledge, coupled
with Bennett's failure to make the necessary disclosures pursuant to Question 12 of the Application,
precludes coverage for all Insureds.    Also, Axis determined that there was no coverage under the
Knowledge Exclusion because, as of August 11, 2005, Bennett, and possibly other Insureds, possessed
knowledge of facts, circumstances, situations, acts, errors or omissions which they had reason to suppose
might afford grounds for a claim under the Policy.  Finally, Axis's disclaimer based on the pending and
prior litigation exclusion was based on certain prior litigations other than the CFTC action, of which Axis
only became aware on April 30, 2007.  The CFTC action simply lends further support to Axis's disclaimer
on that ground.

Policy provides that "The Insurer will have no duty under the Policy to defend any Claim. The Insureds must defend any Claim made against them." Therefore, the general principle that "the duty to defend is broader than the duty to indemnify" is simply not applicable to this insurance policy.[6]

Put another way, Condition D(2) provides for the payment of "covered Defense Costs on an as-incurred basis." Defense Costs is a defined term – meaning costs incurred in connection with the defense of a Claim. The exclusions in the Warranty, the Knowledge Endorsement, and the Application all mandate that the Axis Policy does not respond to this Claim. Since the Axis Policy does not provide coverage for this Claim, costs incurred in defense of these matters are not Defense Costs incurred in defense of a Claim covered by the Axis Policy. *Federal Insurance Company v. Kozlowski*, 792 N.Y.S.2d 397, 404 (App. Div. 1st Dep't 2005) (holding no duty to pay defense costs where the claim is excluded from coverage). Based on the express policy terms, Axis, having reasonably denied coverage, is not obligated to advance any Defense Costs unless or until it is finally determined pursuant to applicable law that such Defense Costs are covered by the Axis Policy.

Unlike duty to defend policies, which may require the insurer to defend claims even if the insureds are only *arguably* entitled to coverage, policies that provide for reimbursement of covered defense costs (such as the Axis Policy) only entitle the insured to costs once coverage is established. That is the contract that these Insureds purchased and that is the contract that Axis seeks enforced, pursuant only to its terms.

---

[6] Moreover, the obligation to defend is not without limits. *International Business Machines v. Liberty Mutual Ins. Co.*, 363 F.3d 137, 145 (2d Cir. 2004). "[A]n insurer's duty to defend is limited absolutely by the scope of the coverage purchased." *International Business Machines*, 363 F.3d at 144.

The cases cited by the Insureds, and relied upon by the Bankruptcy Court, specifically *WorldCom*,[7] all involve a Court looking to the express terms of the policy at issue and finding that the policy expressly requires advancement of defense costs prior to the final adjudication of coverage. Each of the policies in the cases relied upon by the Insureds expressly required advancement of defense costs prior to a final adjudication of coverage. The Axis Policy contains no such provision. Just the opposite – it only requires the advancement of defense costs that Axis agrees are covered. There is an explicit difference in the contract language found in the WorldCom policy and that found in the Axis Policy. **Unless and until it is determined that this claim is covered, the Insureds are not entitled to the advancement of defense costs.**

## PROCEDURAL POSTURE

There are three separate but related adversary cases involved in this appeal. They are Case No.'s 07-1712, 07-2005, 07-2032. However, as these cases were all consolidated together by the Bankruptcy Court on October 2, 2007, they will generally be discussed together.

Axis denied coverage to the Insureds for Loss arising out of the Underlying Actions by letter dated March 6, 2006. None of the Insureds responded to that letter. On May 23, 2007, Axis filed a complaint in the Bankruptcy Court for the Southern District of New York (the "Axis Complaint") seeking a judicial declaration confirming its determination that the Axis Policy does not provide coverage to any of the Insureds for

---

[7] *In re WorldCom, Inc. Securities Litigation*, 354 F.3d 455 (S.D.N.Y. 2005). In fact, **the insurers in WorldCom did not contest coverage based on the terms of the policy** – only that the policy itself was procured through fraud. The insurers in WorldCom did not assert that an exclusion applied to bar coverage, as Axis does here. *Id.* at 462 (noting insurer does not dispute coverage under policy, including defense costs).

any Loss incurred in connection with the Underlying Actions (Bankr. S.D.N.Y. Index No. 07-1712).

On or about July 12 and 13, 2007, the Officer Insureds filed Answers and Counterclaims to the Axis Complaint. In their Counterclaims, these Officer Insureds sought the same relief as that sought by Axis in the Axis Complaint, namely, a judicial declaration of whether the Axis Policy covers the Loss incurred by the Officer Insureds in the Underlying Actions. Also on July 12, 2007, the Director Insureds and Indicted Insureds filed motions to dismiss or stay the Axis Complaint, and the Officer Insureds filed motions for a mandatory preliminary injunction ordering Axis to pay Defense Costs prior to an adjudication of coverage. On August 10, 2007, Arch Insurance Company (another excess D&O insurer) filed a motion to intervene in the declaratory judgment action for the purpose of opposing the Officer Insureds' motions for a mandatory preliminary injunction ordering Axis to pay Defense Costs.

Axis filed briefs in opposition to the motions for a preliminary injunction ordering Axis to pay Defense Costs and to dismiss the Axis Complaint on August 13, 2007, and filed its Answers and Affirmative Defenses to the Officer Insureds' Counterclaims on August 16 and 23, 2007.[8] The Insureds filed reply briefs on or about August 27 and 29, 2007, and oral argument was heard on the motions on August 30, 2007. On August 31, 2007, the Bankruptcy Court entered an Order granting the Officer Insureds' motion for a preliminary injunction ordering Axis to pay Defense Costs and dismissing the Axis Complaint without prejudice (the "August 31, 2007 Order"). Axis filed a Notice of Appeal on September 4, 2007, from the August 31, 2007 Order of the Bankruptcy Court

---

[8] In its Affirmative Defenses to Counterclaims, Axis again asserted the absence of coverage as a defense.

granting the Officer Insureds' application for a preliminary injunction ordering advancement of defense costs from Axis. The Bankruptcy Court also dismissed the Axis Complaint without prejudice, but retained the counterclaims. On September 10, 2007, Axis filed a Notice of Appeal of the Bankruptcy Court's August 31, 2007 Order, which dismissed Axis's Complaint without prejudice.

On September 7, 2007, upon the suggestion of the Bankruptcy Court, Axis filed its complaint in the District Court seeking a judicial declaration confirming its determination that the Axis Policy does not provide coverage to any of the Insureds for any Loss incurred in connection with the Underlying Actions (S.D.N.Y. Index No. 07-7924).

On September 4, 2007, the Indicted Insureds filed an Adversary Complaint in a separate adversary case (Bankr. S.D.N.Y. Index No. 07-2005) against Axis for a declaratory judgment and injunctive relief seeking the advancement of Defense Costs. The Indicted Insureds filed motions on September 5, 2007, for a preliminary injunction requiring Axis to advance their Defense Costs. Axis filed its opposition to this motion for a preliminary injunction on September 9, 2007 and the Officer Insureds filed a motion to intervene for the limited purpose of commenting regarding the injunction motion on September 10, 2007. The Bankruptcy Court held oral argument on the Indicted Insured motion for preliminary injunction on September 11, 2007 – one week after they filed their complaint against Axis. On September 12, 2007, the Bankruptcy Court issued an Order granting, in part, the motion for a preliminary injunction to require Axis to pay officer and director defense costs in the underlying litigations and for relief from the automatic stay to the extent necessary to permit such advancement. On September 19,

2007, Axis filed a Notice of Appeal from the September 12, 2007 Order in Bankr. Index No. 07-2005.

On September 17, 2007, the Director Insureds filed an adversary complaint against Axis seeking a declaratory judgment and injunctive relief to compel Axis to advance their defense costs (Bankr. S.D.N.Y. Index No. 07-2032).

On September 25, 2007, the Director Insureds, the Officer Insureds and the Indicted Insureds filed motions for summary judgment to require Axis to advance defense costs in the underlying litigations. Axis filed its opposition to all Defendants summary judgment motions on October 4, 2007. On October 10, 2007, the Officer Insureds, the Indicted Insureds, and the Director Insureds filed their reply briefs in support of their motions for summary judgment to require Axis to advance defense costs in the underlying litigation. Oral argument was heard by the Bankruptcy Court on October 12, 2007. On October 19, 2007, the Bankruptcy Court issued an Order granting the Defendants motions for summary judgment. On October 22, 2007, Axis filed a Notice of Appeal from the October 19, 2007, Order.

On October 24, 2007 the Bankruptcy Court held a conference wherein Officer Insured Klejna requested leave to file a summary judgment motion in the Bankruptcy Court on the ultimate issue of coverage. The Bankruptcy Court Ordered Axis and Officer Insured Klejna to meet and confer and submit a discovery schedule to the Bankruptcy Court.

On November 13, 2007, the District Court entered an Order withdrawing the reference from the Bankruptcy Court for all of the foregoing matters and setting the briefing schedule for these appeals.

## STANDARD OF APPELLATE REVIEW

On appeal from the Bankruptcy Court's Orders, a District Court must review the Bankruptcy Court's conclusions of law on a *de novo* basis. *In re Worldcom*, 2007 U.S. Dist LEXIS 67669, at *15 (S.D.N.Y. September 14, 2007).

## ARGUMENT

**I.  THE BANKRUPTCY COURT'S RETENTION OF THE COUNTERCLAIMS IS INCONSISTENT WITH THE BANKRUPTCY COURT'S DISMISSAL OF AXIS'S COMPLAINT AND HAS RESULTED IN PIECEMEAL LITIGATION**

The Bankruptcy Court dismissed Axis's Complaint, but incongruously permitted the Insureds' counterclaims – which seek exactly the same relief Axis sought in its Complaint – to survive, and imprudently granted summary judgment based on these same counterclaims.  This ruling denied Axis the ability to seek the very same relief that the Bankruptcy Court then partially granted to the Insureds.  *See* Exhibit E to the Gilbride App. Decl.  Such a result not only contravenes basic fairness, but has resulted in piecemeal litigation of overlapping issues.  It is axiomatic that federal policy disfavors such a result.  *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000); *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 1989 WL 162315 (S.D.N.Y. Aug. 4, 1989).

Axis filed a Complaint seeking a declaration that the matters submitted to it <u>were not covered</u> under the Axis Policy.  The Officer Insureds answered Axis's Complaint and filed Counterclaims seeking a declaration that the matters submitted to Axis <u>were covered</u>

10

under the Axis Policy. The Bankruptcy Court dismissed Axis's Complaint, finding that "there is a substantial overlap between the issues raised in the complaint and the pending litigation." 8/30 Tr. at p. 57-8; Exhibit F to the Gilbride App. Decl (the "8/30 Tr."). It is beyond cavil that this same overlap exists whether a party is seeking a declaration of coverage, or a declaration of no coverage. Counsel to Insureds admitted as much at the August 30, 2007 hearing, saying "you really can't litigate [the advancement issue] in the abstract by itself without the coverage under the policy also being in dispute." 8/30 Tr. at p. 11 l. 14-17.

Once the Bankruptcy Court dismissed Axis's Complaint – seeking a declaration of no coverage – fundamental fairness dictated that the Bankruptcy Court also should have dismissed the counterclaims – seeking a declaration of coverage. Without the counterclaims there is no basis for the summary judgment Order requiring Axis to advance Defense Costs. Similarly, the Indicted Insureds and the Director Insureds were permitted by the Bankruptcy Court to file adversary actions against Axis seeking the same relief sought through the Officer Insureds' counterclaims.

The Bankruptcy Court's inconsistent Orders are not only fundamentally unfair, but will lead to different courts considering the same issues. The Bankruptcy Court's dismissal forced Axis to seek a judicial declaration of no coverage at the District Court while the Bankruptcy Court retained jurisdiction over the counterclaims. It is clear that the Bankruptcy Court did not limit its jurisdiction to the advancement issue. The Bankruptcy Court also indicated openness to consider the proposed summary judgment motion by one Officer Insured on the ultimate issue of coverage – directing Axis and this Officer Insured to begin discovery, prior to the District Court's withdrawal of the

reference from the Bankruptcy Court. The resulting division of the coverage dispute is in contravention of judicial economy and had the potential to lead to inconsistent and duplicative rulings by different Courts. For that reason alone, the Bankruptcy Court's ruling must be reversed.

The Bankruptcy Court's retention of the counterclaims is also entirely inconsistent with its denial of Arch Insurance Company's motion to intervene. The Bankruptcy Court determined that Arch could not litigate the issue of "coverage" because of a state court ruling that it was premature for Arch to litigate coverage. 8/30 Tr. at 18. Arch, however, carefully tailored its motion to intervene to the specific issue of advancement which was the subject of a preliminary injunction motion. The Bankruptcy Court held that Arch could not intervene because the issues of coverage and advancement were too closely intertwined. The Bankruptcy Court was concerned "if I permitted Arch to intervene, we would be frequently interrupted in litigation by considerations of whether what Arch is in particular seeking at that moment (if I permitted it to intervene) would be an end run around that order or whether the order would be binding on it." 8/30 Tr. at 18. Clearly, the Bankruptcy Court understood that the issues of "coverage" and "advancement" were too closely related to be divided. Nevertheless, an hour after denying Arch's intervention motion, and after indicating to Axis that the Bankruptcy Court's "inclination" was that "it seems to me it all should go" the Bankruptcy Court changed course and permitted the Officer Insureds to prosecute their counterclaim for a declaration of coverage.[9] 8/30 Tr. at 60. By permitting the counterclaims to proceed, the

---

[9] In fact, the Bankruptcy Court initially indicated dismissal of the entire litigation – including the counterclaims – was its "preliminary ruling" and its "strong inclination." 8/30 Tr. at 60.

Bankruptcy Court completely contradicted the entire basis for its denial of Arch's motion to intervene and its dismissal of Axis's complaint.

The Indicted Insureds and the Director Insureds – both of which successfully moved for the dismissal of the Axis Complaint – subsequently filed adversary actions against Axis which were consolidated with the Officer Insureds' counterclaims and part of the joint motion for summary judgment on the issue of advancement. Having successfully achieved dismissal of the Axis Complaint for a declaration of no coverage, it makes no sense that the same Insureds were permitted to prosecute adversary complaints predicated upon an assumption of coverage.

Coverage or no coverage – one Court should make that determination, albeit the District Court or the Bankruptcy Court. Clearly, the Bankruptcy Court believes the District Court is the appropriate forum and, as such, its inconsistent rulings on the dismissal of Axis's complaint and retention of the counterclaims cannot stand.[10]

**II.    THE BANKRUPTCY COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT TO THE INSUREDS CONTRARY TO THE EXPRESS UNAMBIGUOUS TERMS OF THE INSURANCE CONTRACT, BASED UPON A MISAPPLICATION OF PRIOR CASELAW, AND IGNORING BASIC CONCEPTS OF CONTRACT INTERPRETATION**

The Bankruptcy Court ignored the plain language of the insurance contract which only provides for the advancement of **covered** defense costs. The Axis Policy allows

---

[10] It is Axis's position that, having dismissed Axis's complaint, the Bankruptcy Court should have also dismissed the counterclaims, and not encouraged the filing of additional adversary actions against Axis by other Insureds seeking advancement of defense costs. If the Bankruptcy Court had dismissed the counterclaims, it never would have made the erroneous decision to grant summary judgment on the advancement of defense costs. Accordingly, if the District Court agrees with Axis that the Bankruptcy Court should have dismissed the counterclaims, the advancement issue is moot because the Bankruptcy Court never should have issued that ruling. If the District Court agrees with the Bankruptcy Court's retention of the counterclaims, however, Axis has also appealed the Bankruptcy Court's erroneous grant of summary judgment, which itself was fatally flawed.

Axis to make the initial good faith determination of what is covered. Since the Bankruptcy Court divested itself of the power to determine that Axis's coverage disclaimer was incorrect, the Bankruptcy Court should not have ordered Axis to advance defense costs which Axis had determined were not **covered**. Further, the Bankruptcy Court interpreted a line of caselaw which is clearly inapplicable to the terms of the Axis Policy. Finally, in its interpretation of the Axis Policy, the Bankruptcy Court ignored basic concepts of contract interpretation and failed to give all terms of the contract meaning – selectively excising certain terms necessary to reach its outcome determinative decision.

## A. The Axis Policy Language Addressing Payment of Defense Costs is Materially and Unavoidably Different from the Worldcom Policy Language

The language found in the Axis Policy is materially and unavoidably different from the language found in the WorldCom policy, upon which the Bankruptcy Court based its decision. In *WorldCom*, the District Court held that the express terms of the WorldCom policy governed until a Court determined that rescission of the policy was proper. In *WorldCom*, the District Court examined the express terms of the WorldCom policy and found that, in light of the fact that the insurers did not contend coverage was excluded by any of the terms, conditions or exclusions of the policy,[11] the policy continued in force and the express terms of the WorldCom policy required the advancement of defense costs while the rescission action was still pending. *WorldCom*, 354 F.3d at 462.

---

[11] Here, Axis contends that coverage for the Underlying Actions is excluded based upon exclusions such as the Warranty Letter, which by its terms, becomes an exclusion, and the prior knowledge exclusion. Neither of these exclusions require a final adjudication of fact.

The Axis Policy is materially different from the WorldCom policy.  The Axis Policy does not contain the express advancement language found in the WorldCom policy, and, unlike the WorldCom insurers, Axis has denied coverage *pursuant to* the terms, conditions and exclusions of the Axis Policy.  The WorldCom insurers asserted that the policy itself was a nullity and sought to void the terms of the WorldCom policy.  Axis has not rescinded the Axis Policy and seeks to have its terms applied, as written.  The WorldCom policy is attached to the Gilbride App. Decl. at Ex. G.  The difference between exclusion and rescission is material when comparing Axis's position to that of the insurers in *WorldCom*.  In *WorldCom*, the insurers did not assert the applicability of an exclusion; rather, they asserted the policy itself should be rescinded because it was procured through fraud.  Despite Axis's attempts to inform the Bankruptcy Court of this difference, the Bankruptcy Court misinterpreted the facts of *WorldCom* and believed the *WorldCom* case was based on an exclusion.  For example, when discussing *WorldCom*, the Bankruptcy Court said, "these cases all deal with exclusions."  SJ Tr. at 25; Exhibit H to the Gilbride App. Decl. ("SJ Tr.").  That is flatly wrong.  In *WorldCom*, the Court never considered the exclusions in the WorldCom policy because the WorldCom insurers never asserted coverage defenses based on the terms of the WorldCom policy.  The WorldCom insurers asserted that none of the policy terms actually existed.  This is a completely different situation from Axis, which asserts that the terms of the Axis Policy exclude coverage for this Claim.

In *WorldCom*, the Court held that, until rescission was adjudicated, the terms of the policy governed.  Since the insurers in *WorldCom* had not denied coverage based on the terms of the policy, the terms of the WorldCom policy expressly called for the

15

advancement of defense costs *__prior to__* the final disposition of the claim. In contrast, Axis

has denied coverage and the terms of the Axis Policy only provide for the advancement

of __covered__ defense costs. A comparison of the relevant policy provisions follows:

**WorldCom Policy**    **Axis Policy**

| **WorldCom Policy** | **Axis Policy** |
| --- | --- |
| THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; **HOWEVER, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.** (Declaration Page, emphasis added) | THE INSURER WILL HAVE NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED. (Declaration Page) |
| Under both Coverage A and Coverage B of this policy, except as hereinafter stated, the Insurer **shall advance**, at the written request of the Insured, Defense Costs **prior to the final disposition of a Claim**. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss. (Clause 8 at p. 10, emphasis added) | The Insurer will pay **covered** Defense Costs on an as-incurred basis. If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer. (Condition D(2) at p. 8, emphasis added) |

Unlike the WorldCom policy, the Axis Policy does not call for the advancement

of defense costs prior to the final disposition of a claim. In fact, the Axis Policy only

requires the payment of __covered__ defense costs on an as-incurred basis. Axis declined

coverage and the Bankruptcy Court previously ruled that it could not and would not reach

the issue of whether Axis's coverage determination was correct. Moreover, the Axis

16

Policy must be enforced as written and there was no basis whatsoever for the Bankruptcy Court to re-draft the Axis Policy because the Insureds now wish the policy they purchased contained the language found in the WorldCom policy. *See Drilling v. New York Life Insurance Co.*, 137 N.E. 314, 316 (N.Y. 1922) ("A contract for insurance is no different than any other contract. The insurance company is entitled to have its contract enforced by the courts as written.") There is a material and unavoidable difference between these two policies – the Axis Policy does not provide for the advancement of defense costs prior to an adjudication of coverage – and no court should rewrite the Policy.

On appeal, the District Court cannot ignore the differences in contractual language between the WorldCom policy and the Axis Policy. To do so would require the District Court to excise the word "covered" from the first sentence of Condition D(2). This is exactly what the Bankruptcy Court did, saying "you're putting too much weight on the word 'covered'". SJ Tr. at 25. Fundamental principles of contract interpretation, however, require that the policy should be read as a whole with effect given to every provision. *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 693 (N.Y. 2002) (insurance policy to be construed in a manner that "leaves no provision without force and effect"). Ignoring the word "covered" leaves that word without any force or effect, a result contrary to New York law.

**B. The Clear and Unambiguous Language of the Axis Policy Does Not Require Advancement When Axis Has Denied Coverage**

The word "covered" is unambiguous and has been defined by decades of New York jurisprudence. Importantly, the New York Court of Appeals has held:

17

> We start our analysis by noting that the coverage under the policies in this case is not merely what is found under the heading "insuring agreement". Just as this clause affirmatively indicates the coverage which is included, so does the "exclusion" clause tell us expressly what is not. In policies so drawn, the protection the insured has purchased is the sum total, or net balance, however one labels it, of a coming together of the two. For it is not either alone, but the combination of both, which defines the scope of the protection afforded no more and no less.

*Albert J. Schiff Assoc., Inc. v. Flack*, 417 N.E.2d 84, 86 (N.Y. 1980). Axis does not dispute that the Underlying Actions constitute a Claim which falls within the Insuring Agreement. However, the analysis does not end there. To be "covered" by the Axis Policy, the Claim must also not be excluded by the remaining terms of the Axis Policy. Here, at least three separate and distinct terms operate to exclude this Claim from "coverage" under the Axis Policy: (1) the Warranty; (2) the Knowledge Exclusion; and (3) the exclusion in the Application.[12] To grant summary judgment for the Insureds, the Bankruptcy Court had to excise the word "covered" from the sentence – "The Insurer will pay <u>covered</u> defense costs on an as-incurred basis." (emphasis added). Simply deleting a word from the bargained-for terms of this Policy is contrary to every principle of contract interpretation. *Consolidated Edison*, 774 N.E.2d, at 693. The Bankruptcy Court redrafted the Axis Policy and provided the Insureds with a benefit Axis did not subscribe to and the Insureds did not purchase. *Schiff*, 417 N.E.2d, at 87 ("for the insured to extend its coverage to more than it originally bargained, it would have had to enter into a supplemental contract expanding the insuring clause or contracting the exceptions.")

---

[12] The pending and prior litigation exclusion also operates to exclude coverage for the Underlying Litigation.

Under New York law, if the terms of an insurance contract are clear and unambiguous, they must be accorded their plain and ordinary meaning and the policy enforced as written. *Govt. Employees Ins. Co. v. Kligler*, 366 N.E.2d 865, 866 (N.Y. 1977); *Schiff*, 417 N.E.2d, at 87 ("it is axiomatic that, while a contract of insurance is to be construed liberally in favor of the insured, where its terms are clear and unambiguous, they must be so read. . . For our task is to find, not to alter the intention of the parties."). New York law views the plain meaning of an insurance contract, such as the Axis Policy, from the viewpoint of sophisticated business people. *Moshiko, Inc. v. Seiger & Smith, Inc.*, 529 N.Y.S.2d 284, 288 (1st Dep't 1988), *aff'd*, 529 N.E.2d 420 (N.Y. 1988). Most importantly, New York courts have historically noted that it is not the function of a court to rewrite insurance policies so as to provide coverage which a court might consider more equitable. *Cornellier v. Am. Cas. Co.*, 389 F.2d 641, 644 (2d Cir. 1968). The fact that the insured may have contracted for coverage that was of little use to it at the time of the loss does not mean that it is entitled to more beneficial coverage for which it did not contract. *Id.*

The language at Condition D(2) is clear and unambiguous. "The Insurer will pay **covered** Defense Costs on an as-incurred basis. If it is finally determined that any Defense Costs paid by the Insurer are not **covered** under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer." (emphasis added). Following plain logic, the use of the term "**covered**" in the first sentence of Condition D(2) would necessarily have the same meaning as its use in the second sentence. Thus, this Condition clearly states that if Defense Costs are ***covered*** by the Axis Policy, they will be paid on an as-incurred basis. However, if the Insurer pays these ***covered*** Defense Costs,

19

but it later turns out that the Defense Costs were not ***covered***, the Insured agrees to pay them back. As held by the New York Court of Appeals, the analysis of what is "covered" includes an analysis of <u>both</u> the insuring agreement and the exclusions. *Schiff*, 417 N.E.2d, at 86. The Bankruptcy Court construed the clear meaning of the word "covered" differently in the first and second sentence. The Bankruptcy Court's interpretation resulted in a twisting of the meaning of the bargained for policy and a rewriting of the Axis Policy to provide coverage where none is available.

The Insureds appear to argue that the word "covered" in the first sentence of Condition D(2) avoids consideration of applicable exclusions in the policy, but the same word in the next sentence includes applicable exclusions. Changing the definition of a term from one sentence to the next runs contrary to fundamental concepts of contract interpretation. *See Consolidated Edison*, 774 N.E.2d, at 693. The Bankruptcy Court never addressed this issue of contract interpretation.

The second sentence of Condition D(2) is not superfluous, as the Insureds have contended. The second sentence of Condition D(2), which provides for repayment if it is finally determined that any Defense Costs paid are not covered, applies in situations where the insurer advances defense costs subject to a reservation of rights – this clause provides the "string" to that payment. The primary and first excess insurers are in precisely this position. They both reserved the right to deny coverage based on Exclusions A and B (personal profit and fraud, respectively), each of which require "a final adjudication adverse to such Insured establishing that the Insured" acted in violation of the exclusion. Insurers relying on these "final adjudication" exclusions need a mechanism to retroactively recover their defense cost payments when a "final

adjudication" is actually achieved. The second sentence of Condition D(2) provides such a mechanism. The Bankruptcy Court completely ignored the difference between exclusions which explicitly contain a "final adjudication" requirement, and those which do not. Accordingly, the Bankruptcy Court failed to give meaning to each term of the insurance contract – the Bankruptcy Court's ruling gives no additional meaning to those exclusions which actually contain an express "final adjudication" requirement. Instead, the Bankruptcy Court created an entirely new standard, saying "the insurer is obligated to advance the defense costs with the caveat that if it is clear from the policy itself and claim made against the insured that the claim would not be covered then such an obligation could be decided on a summary judgment basis and no defense costs would need to be advanced." SJ Tr. at 46. Axis already determined that it was clear from the policy and the allegations in the Underlying Actions, that the claim was not covered – and Axis filed litigation seeking a declaration of its determination. However, the Bankruptcy Court dismissed Axis's complaint. Accordingly, by dismissing the Axis Complaint and bifurcating the advancement issue, the Bankruptcy Court created a rubric whereby there was no possibility for Axis to succeed. The Bankruptcy Court prevented Axis from arguing the very thing that was necessary for a finding requiring the advancement of defense costs – coverage.

If defense costs must be advanced for claims where the insurer has denied coverage until there is a final adjudication, as the Insureds assert, the language requiring a final adjudication for some exclusions, but not others is rendered superfluous. Under the Bankruptcy Court's unreasonable interpretation, all exclusions would require a final adjudication – whether they say so or not. The exclusion in the Warranty specifically

21

does <u>not</u> require a final adjudication and neither does the knowledge exclusion endorsement. The Bankruptcy Court rendered the distinction between those exclusions which require a final adjudication – and those that do not – meaningless.[13]

The Insureds' assertion that Condition D(2) requires the payment of Defense Costs for uncovered Claims is also plainly refuted by Condition D(3). *See* Exhibit I to the Gilbride SJ Decl. Condition D(3) addresses situations where some parts of a Claim may be covered, but others are not. For example, a suit is brought against officers (who are covered by the policy) and employees (who are not covered by the policy.) Condition D(3) provides that the Insureds and the Insurer should use their "best efforts to determine a fair and proper allocation of all such amounts . . . ." Tellingly, Condition D(3) concludes that:

> If the Insureds and the Insurer are unable to agree upon an allocation, then until a final adjudication is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated to make an interim payment of that amount or portion of Loss, ***including Defense Costs, which the parties agree is not in dispute***. (emphasis added).

The Policy expressly provides that if there is a disagreement over coverage of Defense Costs, Axis is only required to advance the amount not in dispute. Here, Axis

---

[13] For example, the Refco policies contain a specific litigation exclusion at Endorsement 7 – excluding coverage for anything related to the "Edward McElwreath Case." Under the rule of law the Bankruptcy Court created, if a claim were made which is indisputably related to the Edward McElwreath Case, the insurer would be forced to pay millions of dollars of defense costs until such time it was permitted to obtain a judicial declaration that the exclusion was triggered. Because the Bankruptcy Court has held it cannot consider the issue of whether or not the exclusion is triggered, the Insureds would not even have to present a colorable argument that the claim was outside the exclusion. Such a result would render an insurer's good faith ability to deny coverage meaningless. The insurance policy would no longer be a contract for the transfer of risk, but would be a funding mechanism creating a financial guarantee for the insured. Where else can someone pay a couple of hundred-thousand dollars and receive a guaranteed return of tens of millions of dollars?

has disclaimed coverage for the entire claim – not just a portion of a claim. According to the plain language of the Policy, Axis is not compelled to advance any Defense Costs. The Policy unambiguously provides that ***covered*** defense costs will be paid as incurred, but if there is a dispute as to coverage; Axis is only obligated to make payment of the undisputed amount.[14] The Bankruptcy Court failed to consider the incongruous result achieved through its interpretation of the Axis Policy – if Axis says 1% of the claim is covered and denies coverage for 99% of the claim, it appears the Bankruptcy Court agrees Axis can make this determination on its own accord and only advance 1% of the defense costs. According to the Bankruptcy Court, however, because Axis disclaimed coverage for 100% of the claim, Axis is divested of the ability to make that determination on its own and must advance 100% of the defense costs until there is a final determination of coverage. This illogical result should not stand.

### C. New York Law Does Not Compel the Advancement of Defense Costs Where an Insurer Has Disclaimed Coverage Under a D&O Policy

New York cases addressing advancement of defense costs in a D&O policy where the insurer asserts that an exclusion prevents coverage, follow the analytical path

---

[14] This is precisely the result that the Officer Insureds advanced in their reply to their motion to dismiss the coverage litigation brought by Arch Insurance Company, another excess D&O insurer of Refco, excess of the Axis policy. The Officer Insureds argued in that case that

> Arch has already denied coverage based on the prior knowledge exclusions. In the [sic] context, its remedy is quite clear and adequate: in conformance with its denial letter, it may simply refuse to indemnify any of the Defendants when and if their liability ever does exceed $40 million so as to trigger the Arch Policy.

Reply Mem. in Support of Officer Insureds' Motion to Dismiss or Stay the Amended Compl. for Declaratory Relief, at 8-9 (internal citation omitted). *See* Exhibit J to the Gilbride App. Decl. The Officer Insureds have admitted that they have no right to seek the advancement of Defense Costs where the insurer has denied coverage. According to the Officer Insureds, "in conformance with [Axis's] denial letter, [Axis] may simply refuse to indemnify . . . ."

established by the New York Court of Appeals in *Schiff*, and hold that the Court must determine whether or not the exclusion applies to bar coverage before ordering the advancement of defense costs. *Kozlowski*, 792 N.Y.S.2d 397, a case cited by the Insureds, distinguishes between an insurer's duty to advance defense costs when it has asserted that the policy is void and should be rescinded and when it asserts application of an exclusion. In *Kozlowski*, the insurer sought: (1) to rescind the policy; and (2) to deny coverage based on a "personal profit" exclusion. As in *WorldCom*, the Court held that the insurer's rescission defense was not a justification for withholding advancement of defense costs. The Court then went on to apply the terms of the policy. With respect to the personal profit exclusion, the Court held that "[t]o the extent such liabilities are excluded from coverage by the personal profit exclusion, ***Federal is not required to pay for defense costs***." *Id*. at 404 (emphasis added). Therefore, the Court <u>considered the exclusion on the merits</u> (something the Bankruptcy Court previously ruled it could not do) in deciding the advancement issue and <u>found that the personal profit exclusion would not exclude coverage</u> for the underlying matters in their entirety. *Id*. at 402-03 (examining allegations of complaint and finding that the "allegations in each of the underlying actions demonstrate that the claims asserted do not solely and entirely fall within the personal profit exclusion").

Likewise, in *Carlin Equities*, 2007 WL 2456958, Index No. 05-cv-9508-LAP (S.D.N.Y. August 24, 2007), a case involving the same "covered defense costs" policy language found in the Axis Policy, the District Court examined the exclusions before ruling on the advancement of coverage. The Court only ordered advancement of defense

costs for those insureds for whom coverage was not excluded under the Carlin Equities' policy.

This is precisely the analysis that is necessary to determine whether Axis must advance defense costs – the Court must first determine whether the Claim is covered by the Axis Policy, analyzing **BOTH** the insuring agreements and the application of exclusions that the insurer contends bar coverage. *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (the protection the insured is entitled to is the net balance of the insuring agreement minus the exclusions).

*Kozlowski* and *Carlin Equities* demonstrate that when an insurer has denied coverage based on a policy exclusion, there is no duty to advance defense costs unless a court has determined that the insurer's coverage position is incorrect. The Bankruptcy Court had to reach the issue of whether exclusions bar coverage for these Insureds under the Axis Policy – failing to do so, the Bankruptcy Court awarded the Insureds a benefit well beyond the terms, conditions and exclusions of the Axis Policy. Since the Bankruptcy Court had previously ruled that it could not reach those issues, the summary judgment motions seeking the advancement of defense costs should have been denied in their entirety.

### D. Public Policy Prevents the Court From Gifting Coverage to the Insureds Which They Did Not Purchase

The public policy arguments discussed by the Bankruptcy Court regarding the availability of D&O insurance are unavailing. D&O insurance is entirely voluntary. Unlike auto insurance, which the legislature has mandated that every driver procure, there is no statutory requirement that companies provide their directors and officers with insurance. *Cf. Stephens v. National Distillers and Chemical Corp., et al.*, 1996 WL

271789, at *5 (S.D.N.Y. May 21, 1996) (noting areas where New York legislature has legislated insurance). Some companies buy a lot, some a little, and some buy none at all. While insureds under a D&O policy have a right to the coverage that they purchased, they do not have any right to expect broader coverage than they purchased. D&O policies are freely negotiated at arms length by experienced professionals. Different insurers offer a variety of different terms and conditions from which directors and officers can select coverage. It is not credible for the Bankruptcy Court to accept the Insureds' argument that public policy dictates that they should be gifted millions of dollars in contravention of the express terms of the insurance contract negotiated on their behalf. There is no *right* to D&O insurance – it is a benefit which can be purchased. Here, the benefit sought – coverage for this claim, including payment of defense costs – was not purchased based upon the warranty signed on behalf of all insureds and the prior knowledge exclusion. Axis expressly sought to exclude from coverage anything that any Insured already knew about which might result in a claim. That the Insureds, or at least Bennett, knew that the facts underlying the current litigation existed and might result in a claim is uncontroverted. This is precisely the type of claim that the Axis Policy was drafted to exclude from coverage.

The public policy arguments articulated in *WorldCom* do not exist here. The *WorldCom* Court was worried that if defense costs were not advanced by the insurer, the insured defendants would face harm because they would not be able to defend themselves in the underlying litigation. Despite repeated opportunities to do so, none of the Insureds have asserted that they would be any less capable of defending themselves in the absence

26

beyond the ruling of any other court and does so in a manner that works a gross injustice to the judicial process.

Dated: November 28, 2007

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

By: _____
    Wayne E. Borgeest
    Joan M. Gilbride
    Robert A. Benjamin
    200 Summit Lake Drive
    Valhalla, New York 10595
    (914) 741-6100 (Telephone)
    (914) 741-0025 (Facsimile)
    wborgeest@kbrlaw.com
    jgilbride@kbrlaw.com
    rbenjamin@kbrlaw.com

    *Attorneys for Plaintiff Appellant*
    *Axis Reinsurance Company*